*465
 
 Per Curiam.
 

 In this action brought under the Persons with Disabilities Civil Rights Act (pwdcra),
 
 [1]
 
 MCL 37.1101
 
 et seq.\
 
 MSA 3.550(101)
 
 et seq.,
 
 and the Worker’s Disability Compensation Act, (wdca) MCL 418.101
 
 et seq.]
 
 MSA 17.237(101)
 
 et seq.,
 
 defendant Machine Shop, Inc., appeals as of right a jury award of $18,000
 
 [2]
 
 in favor of plaintiff and from the trial court’s denial of defendant’s motion for a directed verdict, judgment notwithstanding the verdict (jnov), or a new trial. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 

 In 1973, plaintiff began working for Morbark Industries, Inc., in its machine shop division. In 1988, Morbark Industries, Inc., split into several separate corporations. Plaintiff became classified as an employee of Forestry Products, Inc. However, plaintiff actually worked for defendant, Machine Shop, Inc., a similarly created offshoot of Morbark Industries, Inc. In December 1991, plaintiff sustained a work-related back injury. Despite this injury, plaintiff continued working as defendant’s sole Blanchard grinder operator until February of 1993, when he took a disability leave. Plaintiff received full worker’s compensation benefits from February until June of 1993, when he returned to work in a “favored” position.
 

 While plaintiff was on disability leave, another employee, Jim Zeneberg, was moved to plaintiff’s shift and assigned to operate the Blanchard grinder. However, in July 1994, as part of progressing from the
 
 *466
 
 favored position to a work-hardening program, plaintiff was reassigned to the Blanchard grinder. Plaintiff initially operated the grinder four hours a day, but eventually increased to full-time. During this period, Zeneberg was temporarily assigned to other machines.
 

 While plaintiff participated in the work-hardening program, he was paid $6 an hour and a supplemental worker’s compensation wage-loss differential. He was told that he would resume earning his regular wage of $11.75 an hour when his doctor lifted his work restrictions. On February 24, 1995, plaintiff’s treating physician provided documentation to defendant indicating that plaintiff could return to work without restrictions. On February 27, plaintiff resumed earning his regular wage. The next day, February 28, 1995, plaintiff was laid off and notified that he would not be rehired. Craig Price, the health and human services director for all of Morbark Industries, agreed that plaintiff was misled into believing that once his restrictions were lifted, he would return to his full-time position as a grinder operator. According to defendant’s president, Gary Cotter, plaintiff was laid off because he was not as productive as Zeneberg, the replacement operator.
 

 On May 4, 1995, plaintiff filed suit alleging that he was laid off and not recalled in retaliation for filing his worker’s compensation claim and because he was perceived as suffering from a disability (impaired back). In November 1995, following Zeneberg’s unfortunate death, plaintiff was called back to work as the Blanchard grinder operator. Upon his return, plaintiff was classified as defendant’s employee.
 

 
 *467
 
 i
 

 For its first claim of error, defendant contends that because it was not technically plaintiff’s employer when the alleged retaliatory and discriminatory actions occurred, it was not a proper party to this suit. We disagree. At the onset of trial, the named defendants included defendant Machine Shop, Inc., Morbark Industries, Inc., Morbark Maintenance Company, and Forestry Products, Inc. Before jury deliberations, plaintiff offered to stipulate the dismissal of all entities except defendant. In response, defense counsel indicated that he was “not going to object.” Consequently, the jury considered only defendant’s liability. Under the facts in this case, we find that the jury properly considered defendant’s liability under the wdca and the pwdcra.
 

 This Court applies the economic-reality test to determine whether an employer-employee relationship exists for purposes of the wdca.
 
 James v Commercial Carriers, Inc,
 
 230 Mich App 533, 537; 583 NW2d 913 (1998). The test involves four basic factors: (1) control of the worker’s duties, (2) payment of wages, (3) the right to hire, fire, and discipline, and (4) performance of the duties toward the accomplishment of a common goal.
 
 Id.
 
 In applying these factors, the totality of the circumstances must be examined, with no single factor controlling.
 
 Id.
 
 Under this test, defendant was plaintiff’s employer for purposes of the wdca. At the time plaintiff participated in the work-hardening program and when he was laid off, he was working for defendant as a loaned employee. Defendant directed his activities. Further, defendant clearly had the right to hire, fire, and discipline plaintiff because, in making the decision to lay off plaintiff
 
 *468
 
 and not recall him for over eight months, defendant exercised these rights. With respect to factor four, plaintiff performed work that was part of a “common objective integral to [defendant’s] business” and work that would “normally follow the usual path of an employee.”
 
 Id.
 
 The only factor that arguably does not weigh in favor of the finding of an employment relationship is the payment of wages. However, we note that defendant paid plaintiff’s actual employer, Forestry Products, Inc., for the right to use plaintiff’s services. Thus, under the economic-reality test, we find that defendant was plaintiff’s employer.
 

 With respect to the PWDCRA, we hold that because liability under the act is not dependent on the actual existence of an employer-employee relationship at the time of the adverse employment action but, rather, on the ability to affect adversely the terms and conditions of an individual’s employment or potential employment, defendant’s position lacks merit. The act addresses the conduct of an “employer” who takes adverse employment action against an “individual” because of a handicap that is unrelated to the individual’s ability to perform the duties of a particular job. MCL 37.1202(1)(a); MSA 3.550(202)(1)(a). The act does not limit the definition of “employer” to the plaintiff’s employer but, instead, simply defines it as a “person who has 1 or more employees.” MCL 37.1201(b); MSA 3.550(201)(b). The scope of the act clearly encompasses actions taken by an employer before an employment relationship even exists, e.g., discriminatorily refusing to hire an applicant on account of a disability. Our reading of the plain language of the statute does not require that an employment relationship exist, but simply that the
 
 *469
 
 employer/defendant have the authority to affect a plaintiff’s employment or potential employment. Consequently, we find that the act was intended to encompass the relationship present in this case.
 

 n
 

 Defendant also claims that the trial court erred in denying its motions for a directed verdict and JNOV with respect to plaintiff’s worker’s compensation retaliation claim. We disagree.
 

 The grant or denial of a motion for a directed verdict or JNOV is reviewed de novo.
 
 Meagher v Wayne State Univ,
 
 222 Mich App 700, 708; 565 NW2d 401 (1997);
 
 Forge v Smith,
 
 458 Mich 198, 204; 580 NW2d 876 (1998). In either case, this Court must view the evidence and all legitimate inferences in the light most favorable to the nonmoving party.
 
 Forge, supra; Kubczak v Chemical Bank & Trust Co,
 
 456 Mich 653, 663; 575 NW2d 745 (1998);
 
 Zeeland Farm Services, Inc v JBL Enterprises, Inc,
 
 219 Mich App 190, 195; 555 NW2d 733 (1996). The denial of a motion for a directed verdict or JNOV is reviewed to determine whether the nonmoving party failed to establish a claim as a matter of law.
 
 Kubczak, supra; Forge, supra.
 

 Pursuant to the wdca, an employer may not
 

 discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under [the wdca] or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by [the wdca]. [MCL 418.301(11); MSA 17.237(301)(11).]
 

 
 *470
 
 The burden is on plaintiff to show that there was a causal connection between the protected activity, i.e., the filing of his worker’s compensation claim, and the adverse employment action. See, by analogy,
 
 DeFlaviis v Lord & Taylor, Inc,
 
 223 Mich App 432, 436; 566 NW2d 661 (1997).
 

 The lower court instructed the jury that plaintiff had the burden of proving that (1) he asserted his right for worker’s compensation, (2) defendant laid off or failed to recall plaintiff, (3) defendant’s stated reason for its actions was a pretext, and (4) defendant’s true reasons for its actions were in retaliation for plaintiff’s having filed a worker’s compensation claim. The court further instructed the jury that it should find for defendant only if retaliation was not one of the motivating factors in its decisions. This instruction appears to have been based on SJI2d 105.04, which sets forth the shifting burdens of proof that apply in retaliation claims based on the Civil Right Act, MCL 37.2101
 
 et seq.;
 
 MSA 3.548(101)
 
 et seq.
 
 Neither party objected to the jury instructions at trial, and this Court is satisfied that these instructions accurately set forth the shifting burdens of proof that should also apply in a worker’s compensation retaliation suit. See also,
 
 DeFlaviis, supra.
 

 It is undisputed that plaintiff applied for and received worker’s compensation benefits and that he was laid off and not recalled. Defendant claims that plaintiff’s layoff was not an adverse employment action. However, there was sufficient evidence to show that defendant’s stated reason for termination was a pretext. Evidence indicated that although plaintiff had worked for Morbark Industries, Inc., for twenty-two years, no disciplinary action was noted in
 
 *471
 
 his personnel file. To the contrary, personnel records expressly and repeatedly indicated that plaintiff was an excellent worker. Although Cotter indicated that these positive reports had been fabricated for internal reasons, the jury was free to reject this testimony as untruthful and self-serving. Along the same vein, defendant claimed that plaintiff’s performance was so poor that defendant had no intention of calling him back to work in any position. Yet, after plaintiff filed this lawsuit, defendant recalled him, allegedly because of the company’s standard practice of recalling the most qualified workers to fill open positions. From this evidence, the jury could have concluded that defendant’s stated reason for laying off the plaintiff and failing to recall him was pure pretext.
 

 Moreover, there was sufficient evidence from which a reasonable juror could have concluded that a retaliatory motive contributed to defendant’s actions.
 
 DeFlaviis, supra
 
 at 436. Plaintiff testified that he actively pursued having his work restrictions lifted because company representatives assured him that this was the only obstacle keeping him from returning to his full wages. In effect, plaintiff was terminated on the day after he succeeded in ending his own worker’s compensation eligibility. On the basis of the timing of the layoff, evidence that cutbacks were not necessary, evidence that upper management inquired into the cost of plaintiff’s worker’s compensation benefits, and evidence of defendant’s role in having the work restrictions lifted, it was reasonable for the jury to conclude that retaliation was a motive for laying off plaintiff and not recalling him. Thus, the trial court’s denial of defendant’s motions for jnov and a directed verdict was not error.
 

 
 *472
 
 m
 

 Defendant next claims that the lower court erred in denying its motions for a directed verdict and JNOV with respect to plaintiffs pwdcra claim. We agree.
 

 We read the PWDCRA in light of the primary goal of judicial interpretation, which is to ascertain and give effect to the intent of the Legislature.
 
 Shallal v Catholic Social Services of Wayne Co,
 
 455 Mich 604, 611; 566 NW2d 571 (1997). Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.
 
 People v Lee,
 
 447 Mich 552, 557-558; 526 NW2d 882 (1994). Provisions of a statute are not construed in isolation but, rather, in the context of other provisions of the same statute to give effect to the purpose of the whole enactment.
 
 Guitar v Bieniek,
 
 402 Mich 152, 158; 262 NW2d 9 (1978). “Further, in interpreting provisions of the [pwdcra], analogous federal precedents are persuasive, although not necessarily binding.”
 
 Chmielewski v Xermac, Inc,
 
 457 Mich 593, 601-602; 580 NW2d 817 (1998). This Court and the Michigan Supreme Court have noted that the federal Americans with Disabilities Act (ADA), 42 USC 12101
 
 et seq.,
 
 and the pwdcra share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the pwdcra.
 
 Chmielewski, supra
 
 at 602-603;
 
 Collins v Blue Cross Blue Shield of Michigan,
 
 228 Mich App 560, 568; 579 NW2d 435 (1998);
 
 Stevens v Inland Waters, Inc,
 
 220 Mich App 212, 216-218; 559 NW2d 61 (1996). Thus, while this Court must follow precedent from this Court and the Michigan Supreme Court where federal analysis has been adopted, and may look to the ADA and federal cases
 
 *473
 
 interpreting the ADA for guidance, this Court is not obliged to follow federal precedent in analyzing the PWDCRA unless this Court concurs with such analysis.
 

 The PWDCRA was enacted with the purpose of ensuring “that all persons be accorded equal opportunities to obtain employment, housing, and the utilization of public accommodations, services, and facilities.”
 
 Stevens, supra
 
 at 216. With respect to employment, the issue in this case, the PWDCRA provides that an employer shall not “[discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual’s ability to perform the duties of a particular job or position.” MCL 37.1202(1)(b); MSA 3.550(202)(1)(b). To establish a prima facie case of discrimination under the statute, a plaintiff must show that (1) he is “disabled” as defined by the statute, (2) the disability is unrelated to the plaintiff’s ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute.
 
 Sanchez v Lagoudakis (On Remand),
 
 217 Mich App 535, 539; 552 NW2d 472 (1996). Before a court can address a plaintiff’s ability to perform his job, any alleged discrimination and certainly any pretext for the “discrimination,” the plaintiff must establish that he is the type of person to which the statute was meant to pertain—a person with a “disability.”
 

 The PWDCRA defines a “disability” as follows:
 

 (i) A determinable physical or mental characteristic of an individual which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
 

 
 *474
 
 (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual’s ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual’s qualifications for employment or promotion.”
 

 (iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i). [MCL 37.1103(d); MSA 3.550(103)(d).]
 

 Thus, not every impairment rises to the level of a disability under the pwdcra. The impairment must meet the requirements of the statutory definition of “disability.” And the “mere assertion of diminished capacity does not constitute a disability within the meaning of the [act].”
 
 Hilburn v Murata Electronics North America, Inc,
 
 17 F Supp 2d 1377, 1382 (ND Ga, 1998) (interpreting the ADA). Instead, a plaintiff “must provide some evidence beyond the mere existence and impact of a physical impairment.”
 
 Id.,
 
 citing
 
 Swain
 
 v
 
 Hillsborough Co School Bd,
 
 146 F3d 855, 858 (CA 11, 1998). The United States Supreme Court has followed a three-step process for determining whether a plaintiff has a disability under the ADA:
 

 First, we consider whether respondent’s [complaint] was a physical impairment. Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.
 
 [Bragdon v Abbott,
 
 524 US 624, 631; 118 S Ct 2196; 141 L Ed 2d 540 (1998).]
 

 This test tracks closely the language found in the PWD-CRA definition of a disability and is thus reasonably
 
 *475
 
 well-suited for determining the existence of a disability under the pwdcra.
 

 However, in this case, plaintiff apparently does not argue that he was actually disabled as defined under the pwdcra at the time of defendant’s allegedly discriminatory actions. Rather, plaintiff argues that defendant
 
 regarded
 
 him as disabled, under subsection 103d. Regardless of whether plaintiff was actually disabled within the meaning of the pwdcra, and even if plaintiff no longer had any impairment at all at the time of the alleged discriminatory conduct, defendant could be found to have violated subsection 103d of the PWDCRA if it discriminated against plaintiff on the basis of a perceived disability. Although this claim may at first appear easier to establish because a plaintiff need not actually be disabled to fall within the PWDCRA, a plaintiff must still prove that the employer perceived that the employee was actually “disabled” within the meaning of the statute. See
 
 Colwell v Suffolk Co Police Dep’t,
 
 158 F3d 635, 646 (CA 2, 1998) (interpreting the ADA). In other words, showing that an employer thought that a plaintiff was somehow impaired is not enough; rather, a plaintiff must adduce evidence that a defendant regarded the plaintiff as having an impairment that substantially limited a major life activity—just as with an actual disability.
 
 Murphy v UPS, Inc,
 
 527 US 516; 119 . S Ct 2133; 144 L Ed 2d 484 (1999);
 
 Colwell, supra
 
 at 646; MCL 37.1103(d)(i)(A); MSA 3.550(103)(d)(i)(A). Normally, a
 
 perceived
 
 disability will be one that pertains to a disability with some kind of unusual stigma attached, often a mental disability, where negative perceptions are more likely to influence the actions of an employer. Rarely, on the other hand, will an employer
 
 *476
 
 inaccurately perceive an employee to have a
 
 physical
 
 impairment because such impairments are generally obvious and unlikely to be misread. An employee will rarely if ever be wrongly perceived, for example, to suffer from blindness, deafness, amputation, or paralysis.
 

 Accordingly, to determine whether there was evidence sufficient to establish that defendant perceived plaintiff as being disabled within the meaning of the pwdcra, we rely on the three-step process utilized in Bragdon,
 
 supra
 
 at 624. First, we inquire whether the evidence established that plaintiffs back injury was a physical impairment. There seems little dispute that a back injury is a physical impairment. Moreover, the evidence of plaintiff’s worker’s compensation benefits, disability leave, and the doctor and therapist testimony established that plaintiff did indeed suffer a back injury. Plaintiff’s claim that defendant regarded him as disabled is based on the contention that defendant believed that plaintiff still had the physical impairment of the back injury even after the work restrictions were lifted. Although defendant’s employees admitted that they were informed that plaintiff’s work restrictions had been removed, plaintiff points to the fact that Gary Cotter, defendant’s president, indicated that the slagger positions, for which plaintiff was qualified but not recalled, were viewed as requiring a strong back. The negative inference is that defendant did not believe that plaintiff had a sufficiently strong back. Viewed in the light most favorable to plaintiff, it appears that defendant questioned whether plaintiff still had a physical impairment in this case even after his work restrictions were lifted.
 

 
 *477
 
 We next determine whether plaintiff identified a “major life activity” that was affected by the impairment. This Court has defined major life activities as “functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.”
 
 Stevens, supra
 
 at 217. Thus, any “substantial limitation” suffered by an allegedly disabled individual must relate to one of these activities.
 
 [3]
 
 In view of the potential breadth of these activities, the reach of the PWDCRA is limited principally by the third prong of the
 
 Bragdon
 
 process requiring that the activity be “substantially limited” and by the overall purposes of the act. Regardless, the problem in this case is not whether the activity affected was “major” enough to fit within the statute but, rather, whether
 
 any
 
 activity was affected. Plaintiff did not allege, let alone present evidence, that a major life activity was implicated.
 
 [4]
 

 On appeal, plaintiff contends that he was “improperly perceived by the employer as having a substantial
 
 *478
 
 limitation in the major life activity of working” because “the employer did not want him working for them in any capacity.” This Court stated in
 
 Lown v JJ Eaton Place,
 
 235 Mich App 721, 735; 598 NW2d 633 (1999), that “if an individual is not substantially limited with respect to any other major life activity, the individual’s ability to perform the major life activity of working should be considered.” However, even if we assume that “working” is the major life activity affected in this case, the inability to perform a
 
 particular
 
 job does not constitute a substantial limitation.
 
 Stevens, supra
 
 at 218;
 
 Halperin v Abacus Technology Corp,
 
 128 F3d 191, 199 (CA 4, 1997). Instead, the impairment must significantly restrict an individual’s ability to perform at least a wide range of jobs.
 
 Id.
 
 As discussed under the third part of the
 
 Bragdon
 
 process, below, there was no evidence in this case that plaintiff was regarded as having a substantial limitation in performing such a range of jobs.
 
 [5]
 

 There was also testimony at trial that plaintiff was restricted from lifting over fifty pounds “eye level.” However, a general lifting restriction, without more, is insufficient to constitute a disability.
 
 Lown, supra.
 
 This Court has explicitly adopted federal holdings that “evidence of a twenty-five-pound lifting limitation does not suffice to establish a genuine issue of a material fact regarding the existence of a disability
 
 *479
 
 because it is not a substantial limitation when compared to the average person.”
 
 Lown, supra
 
 at 732. Thus, plaintiffs fifty-pound lifting limitation certainly does not qualify as a substantial limitation of a major life activity, especially considering that he stated that he could not have done the lifting required in his job without a hoist to help him even before his back injury.
 
 [6]
 

 Third, we determine whether the back injury “substantially” limited a major life activity. Courts must read this language according to its plain and ordinary meaning,
 
 Lee, supra
 
 at 557-558. Thus, “it is not enough for an impairment to affect a major life activity,”
 
 Snow v Ridgeview Medical Center,
 
 128 F3d 1201, 1207 (CA 8, 1997), but rather the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially limited.
 
 Id.) Colwell, supra
 
 at 643. To determine whether an individual is substantially limited, a court considers (i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or expected permanent or long-term effect.
 
 Stevens, supra
 
 at 218;
 
 Colwell, supra
 
 at 643. Thus, a disability normally does not include temporary medical conditions, even if those conditions require extended leaves from work.
 
 Halperin, supra
 
 at 199. This Court noted that “intermittent, episodic
 
 *480
 
 impairments are not disabilities, the standard example being a broken leg.”
 
 Lown, supra
 
 at 733, quoting
 
 Vande Zande v Wisconsin Dep’t of Administration,
 
 44 F3d 538, 544 (CA 7, 1995). The length of the “temporary” impairment need not be brief.
 
 Lown, supra
 
 at 733. Although this Court in
 
 Lown
 
 did not find it necessary to decide whether a two-year impairment was “temporary,” this Court cited other cases in which impairments of similar duration were considered temporary. “Several courts have held specifically that back injuries of limited duration do not constitute a handicap.
 
 See Jones v Alabama Power Company,
 
 1995 WL 238338 (ND Ala, [(1995), aff’d 77 F3d 498 (CA 11, 1996)];
 
 Paegle v Department of Interior,
 
 813 F Supp 61, 62 (D DC, 1993);
 
 Visarraga v Garrett,
 
 1993 WL 209997 (ND Cal, [1993]).”
 
 Rakestraw v Carpenter Co,
 
 898 F Supp 386, 390 (ND Miss, 1995).
 

 Reading the statutory language plainly, an impairment cannot be “substantial” if it is of a merely temporary nature. The types of impairments that are generally temporary are often commonly shared by many in the general public—nearly everyone suffers temporary injuries or maladies at some point in life. Yet the intent of the Legislature here, as well as that of Congress with the federal disability discrimination statutes, was that disability discrimination claims be available only to those with characteristics that are
 
 not
 
 commonplace and are not directly related to ability to do the job. See
 
 Fuqua v Unisys Corp,
 
 716 F Supp 1201, 1207 (D Minn, 1989). The Fourth Circuit Court of Appeals aptly stated the problem with temporary impairments:
 

 Applying the protections of the ada to temporary impairments, such as the one presented here [lower back injury],
 
 *481
 
 would work a significant expansion of the Act. The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather the ADA was designed to “assure [ ] that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps.”
 
 Forrisi
 
 [i>
 
 Bowen,
 
 794 F2d 931, 934 (CA 4, 1986)]. Extending the statutory protections available under the ADA to individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual’s ability to work would trivialize this lofty objective.
 
 [Halperin, supra
 
 at 200.]
 

 This commentary applies equally well to the pwdcra, which this Court has determined has a purpose and language similar to that of the ADA.
 
 Stevens, supra
 
 at 216-217. The Michigan Supreme Court in
 
 Chmielewski, supra
 
 at 609, explicitly declined to follow federal EEOC guidelines where the Court found that they would lead to the “inclusion of many commonplace and relatively benign and easily remedied conditions into the act’s definition of handicap.” This inclusion of common ailments and injuries would mean that nearly everyone would qualify as “disabled” at some time during their life. Allowing nearly everyone to take advantage of the pwdcra would undermine the purpose of the act itself, which was to assure that the “truly disabled” will not face discrimination because of stereotypes. See
 
 Chmielewski, supra
 
 at 609. The larger the class of “protected individuals,” the less significant the pwdcra can be in “equaling the playing field” for those individuals suffering from the most severe and genuinely intractable disabilities. Although we do not adopt any bright-line rule for determining the exact length of time required for “substantial duration” and do not purport to define what types of
 
 *482
 
 impairments would qualify as “commonplace,” we nonetheless conclude that the term “disability” embodied in the pwdcra. connotes some sense of permanency. Therefore, where an impairment is temporary and relatively easily remedied, when considered in the greater scheme of potential impairments, such as with a temporary back injury, such an ailment is not a substantial limitation on any major life activity.
 

 In this case, it appears that plaintiff did not suffer from a permanent disability. Indeed, plaintiffs work restrictions had been lifted at the time of the alleged discrimination. And plaintiff “continued to perform the same or similar work that [he] had previously performed.”
 
 Hilbum, supra
 
 at 1383. Under these circumstances, it is difficult to see how defendant could perceive that plaintiff suffered from an impairment that substantially limited a major life activity. Even if defendant viewed plaintiff as having a bad back after the work restrictions were lifted, defendant could not have regarded plaintiff as disabled within the meaning of the pwdcra. This is because a temporary limitation caused by a commonplace injury, such as a back injury, would not constitute a substantial limitation on any major life activity.
 
 [7]
 

 In addition, plaintiff did not present evidence that his impairment, real or perceived, was viewed as a substantial limitation on his ability to perform a wide range of jobs. “[A]n employer does not perceive an employee as disabled merely by determining the
 
 *483
 
 employee to be unable to temporarily satisfy the requirements of a singular position.”
 
 Fuqua, supra
 
 at 1207. This would open up the pwdcra to anyone who refused a job because they could not perform a single job requirement.
 
 Id.
 
 In this case, plaintiff was working at his original job before his work restrictions were lifted, and plaintiff informed defendant that he was ready, willing, and able to perform his original job when all his work restrictions were lifted. Even if defendant viewed plaintiff’s bad back as limiting his work at his original job, or in the “strong back” slagger positions, there is no indication that this was the full range of jobs that plaintiff could have performed. Certainly plaintiff worked at other positions even when he had work restrictions, and defendant’s employees testified that they considered plaintiff qualified and able to do several positions even before plaintiff’s restrictions were lifted, such as jobs on the drill press and the tool crib. While worker’s compensation benefits are appropriate when a claimant cannot perform particular or “favored” work, even the expansive EEOC definition of “major life activity,” adopted in
 
 Stevens, supra
 
 at 218, requires that an alleged disability interfere substantially with an individual’s ability to “work” generally, or to work at all, not merely to work in a specific position of employment. Thus, we conclude that plaintiff has not shown a perceived substantial limitation on the activity of working, even if the injury were viewed as being of sufficient duration.
 

 Overall, it appears that plaintiff argues circularly that defendant must have regarded him as disabled because defendant laid off plaintiff and did not hire him back immediately. However, we have not found
 
 *484
 
 any evidence to support the conclusion that defendant believed that plaintiffs impairment was long-term or significantly affected a major life activity. The only evidence relevant to defendant’s perception of plaintiff as disabled was the testimony that the slagger positions were not suitable for plaintiff because they required a strong back. However, without more, we cannot equate a mere perceived impairment of an unknown degree with a perceived “disability,” as that term is defined under the pwdcra. The law does not allow a jury to assess damages on the basis of allegations and supposition—there must be facts supporting the allegations on which a finding of discrimination can rest. In this case, even looking at the evidence in the light most favorable to plaintiff, there were no facts supporting plaintiff’s allegation that defendant regarded him as disabled such that plaintiff could sue under the pwdcra. Thus, we reverse the trial court’s denial of defendant’s motion for a directed verdict or jnov with respect to the disability discrimination claim, and we remand for a determination of the effects, if any, this decision has on the judgment entered below.
 

 As the United States Supreme Court emphasized in its recent cases of
 
 Albertsons, Inc v Kirkingburg,
 
 527 US 555; 119 S Ct 2162; 144 L Ed 2d 518 (1999),
 
 Murphy, supra,
 
 and
 
 Sutton v United Air Lines, Inc,
 
 527 US 471; 119 S Ct 2139; 144 L Ed 2d 450 (1999), too often the courts have simply accepted impairments as disabilities without strictly determining whether a plaintiff was disabled according to the language of the statutes; as a result, too many individuals have been designated “disabled” who were outside the contemplation of the legislative bodies that drafted these
 
 *485
 
 statutes. In order to preserve the protections of the pwdcra for those truly intended to benefit, courts must be sure to make findings that a plaintiff is truly included within the pwdcra’s definition of “disabled.” The pwdcra was not intended to limit employers’ liberty to make general employment decisions whenever an employee turns out to have less than perfect health for some reason—it was only intended to limit discrimination on the basis of a genuine disability that did not affect the employee’s ability to work.
 

 To the extent that the pwdcra is interpreted to mean that “we are all disabled now,” it will offer little benefit to those who are truly disabled and will fail in its manifest purpose.
 

 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 

 [1]
 

 The pwdcra was known as the Handicappers’ Civil Rights Act at the time plaintiff initiated this suit.
 

 [2]
 

 The award was reduced by $3,118 to reflect unemployment benefits received by plaintiff.
 

 [3]
 

 This definition, apparently derived from regulations promulgated by the Equal Employment Opportunity Commission (eeoc) pursuant to the ADA, 29 CFR 1630(2)(i), is not, in view of its vagueness and potential breadth, particularly useful in giving meaning to the equally vague and potentially broad term being defined. Particularly in light of the observation in
 
 Lown v JJ Eaton
 
 Place, 235 Mich App 721; 598 NW2d 633 (1999), that the eeoc definition is nonexclusive, it is difficult to understand the value of this definition, except to effectively remove from consideration in most disability discrimination lawsuits the second prong of the three-pronged process outlined in
 
 Bragdon, supra.
 
 Whether an alternative definition of “major life activity” might reasonably be derived is beyond the scope of the instant case.
 

 [4]
 

 Plaintiff seems to have assumed that the back injury in this case constituted a statutory disability under the pwdcra or perhaps that such a finding need not be made because there was no allegation of an actual disability. Any such assumption was erroneous. A plaintiff must put forth evidence that the employer perceived that a mqjor life activity was implicated.
 

 [5]
 

 Plaintiff argues that defendant perceived him as “being unable to perform any of the jobs in the Machine Shop.” However, defendant’s position is unsupported by the evidence. The evidence merely showed that plaintiff was not recalled for any jobs, not that defendant believed that plaintiff was physically unable to do all the jobs and thus did not recall him. While the fact that plaintiff was not recalled to any job is evidence sufficient to sustain the wdca retaliation claim, it is not sufficient as a matter of law to support a claim of discrimination based on the employer’s perception that plaintiff was disabled.
 

 [6]
 

 As discussed in greater detail later in this opinion, a back injury of limited duration is not commonly considered a disability or handicap.
 
 Fuqua v Unisys Corp,
 
 716 F Supp 1201, 1205 (D Minn, 1989). Even if the back ii\jury here were found to be permanent or regarded as permanent, there was no evidence that the impairment affected or was perceived to affect any specific activity. Without this evidence, plaintiff cannot argue that he fit within the class of people that the pwdcra aimed to help, and a directed verdict or jnov should have been granted.
 

 [7]
 

 We are aware that plaintiff suffered several back injuries during his employment with defendant, beginning in the 1980s. The first back injury required surgery, after which plaintiff returned to work until the 1991 injury currently at issue. The record shows that these injuries were two separate incidents, and there is no evidence that they were part of a larger disability or syndrome or related in any fashion.