# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN MITCHELL,

        Plaintiff-Appellee,

v

DORE & ASSOCIATES CONTRACTING, INC.,

        Defendant-Appellant.

UNPUBLISHED
September 13, 2018

No. 338701
Bay Circuit Court
LC No. 15-003594-CL

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

A jury found that Dore & Associates Contracting, Inc. retaliated against its employee, Ryan Mitchell, for exercising his rights under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*., and awarded Mitchell approximately $170,000. Dore appealed, challenging the court's earlier denial of its motion for summary disposition under MCR 2.116(C)(10) and rejecting its bid to present evidence of Mitchell's criminal history and his excused absence from work to care for his hospitalized sister. We discern no error and affirm.

## I. FACTS

Dore is a Michigan demolition company that engages in projects in multiple states. A project manager leads each project and the manager selects a team of employees to work at his or her site. At the conclusion of a project (or the particular employee's role in a project), the employee is laid off and collects unemployment compensation. The employee is recalled to work when another project becomes available. Mitchell worked for Dore as a Class 1 laborer, an unskilled worker tasked with tearing down the insides of buildings, cleaning job sites, and removing debris. He was not qualified to remove asbestos or to operate heavy machinery; employees of higher classification performed those functions. Mitchell worked for Dore on eight projects, travelling to other states and living in rented lodging. Mitchell's employment was interrupted when he broke his leg in a worksite accident on March 1, 2013. Mitchell filed for workers' compensation and Dore did not challenge his entitlement to those benefits. Mitchell collected workers' compensation for one year before his doctor released him for work.

During a pretrial deposition, Edward Dore testified that he handles risk management for Dore. In relation to Dore's workers' compensation insurance policy, Edward described that the company's premium was controlled by its "experience modification factors," a rating determined by insurers based on a company's payroll, historic number of claims, and other similar

information. Increased claims or high claim payouts increase a company's premium. The difference would not be felt immediately, however, with the premium rising approximately a year or two after a workers' compensation claim being filed. Edward also had the final say on employee termination decisions, though such decisions did not always require his involvement.

Mitchell testified that during his disability, he worried about his chances of being brought back to work. There was an ongoing joke among Dore employees that an employee injured on the job would never work for Dore again. However, Mitchell's previous project manager, Michael Green, did recall Mitchell to work at the end of April 2014. Two months later, Mitchell overheard his name during a telephone conversation between Green and Edward. When Mitchell asked Green why he was mentioned, Green responded, "[Edward] asked me what you were doing on the job . . . . He probably seen you were on the payroll." According to Mitchell, Green approached him soon after to let him know that Edward no longer wanted him working on the project. Green later clarified, "Well, [Dore] no longer wants you on the job."

Mitchell opined that he was laid off because he had filed a workers' compensation claim and caused Dore's insurance premium to go up. Dore asserted that the tasks available for general laborers on the site had simply dried up. Mitchell noted that the two other laborers working on the site were not laid off as evidence of Dore's discriminatory animus. Dore retorted that Edward had spoken to Green before he recalled Mitchell for work and approved of the decision. Dore further asserted that the other two laborers were still useful on the site; one was certified to operate heavy equipment and the other had more seniority than Mitchell and could manage the remaining general labor tasks alone. After this project, however, Dore never recalled Mitchell to work again. After much searching, Mitchell found work as a line cook for lower pay.

Mitchell subsequently filed this retaliatory discrimination action against Dore. Dore sought summary dismissal of Mitchell's action but the lower court denied its motion. The matter proceeded to a jury trial and the jury found in Mitchell's favor. Dore now appeals the court's denial of its motion for summary disposition and certain evidentiary rulings made prior to trial.

## II. SUMMARY DISPOSITION

We review de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Under MCR 2.116(C)(10), summary disposition may be granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists." *Dextrom*, 287 Mich App at 415-416. As noted by this Court, "[a] question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id.* at 416. In considering a summary disposition motion, the court may not resolve factual disputes or weigh credibility. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

The Legislature has proscribed retaliating against an employee for exercising his or her rights under the WDCA:

A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act. [MCL 418.301(13).]

To establish a prima facie case of retaliatory discharge under the WDCA, an employee must put forward evidence that (1) the employee asserted a right under the WDCA or actually exercised that right; (2) the employer knew of the employee's protected activity; (3) "the employer took an employment action adverse to the employee"; and (4) there was a causal connection between the adverse employment action and the employee's protected activity. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 275; 826 NW2d 519 (2012).

Mitchell alleged that he engaged in two protected activities: filing a claim for benefits and collecting benefits. Filing a claim under the WDCA is a protected activity. *Chiles v Machine Shop, Inc*, 238 Mich App 462, 470; 606 NW2d 398 (1999). An argument could be made that an employee exercises a right under the WDCA when he or she collects benefits. However, Mitchell has provided no authority for his proposition that collecting workers' compensation benefits is itself a protected activity and Dore challenges this characterization. For the sake of this argument, we will proceed as if collecting benefits is not a protected activity without resolving the issue.

It is undisputed that Dore knew that Mitchell had applied for and been granted workers' compensation benefits. Mitchell also suffered an adverse employment action when he was laid off from his first project after he was released to work and Dore never recalled him.[1]

"[C]ausation[] is usually difficult to prove." *Cuddington*, 298 Mich App at 275. It is a rare case in which the employer will make statements providing direct evidence of its discriminatory motive. *Id*. at 276. Dore notes the lack of temporal proximity between Mitchell's filing of his workers' compensation claim in March 2013 and his final lay off on July 11, 2014. Although temporal proximity is a factor to consider in a causation analysis, it is insufficient standing alone to prove (or disprove) a causal connection. *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003) ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed.").[2]

---

[1] It is immaterial whether Mitchell was "laid off" or "terminated." Michigan caselaw has recognized both outright termination, see *Cuddington*, 298 Mich App at 277, and being "laid off and not recalled," see *Chiles*, 238 Mich App at 470, as adverse employment actions.

[2] *West* involved an employer's retaliatory discrimination against an employee for taking protected action under the Whistleblowers' Protection Act. However, this Court has relied on retaliation cases under the WPA and the Civil Rights Act in analyzing such suits under the WDCA. See *Cuddington*, 298 Mich App at 275.

Here, Mitchell presented sufficient evidence at the summary disposition stage to create a triable question of material fact. Specifically, Mitchell presented evidence that Dore terminated his employment once Edward learned that Green had recalled Mitchell to work after being out on disability. Mitchell presented evidence that Green recalled him to work without Edward's knowledge and that once Edward learned of Mitchell's return, he instructed Green to fire him. Dore presented evidence to contradict these statements. However, Dore's evidence only created a credibility contest that the trial court was not permitted to resolve in considering Dore's summary disposition motion. Accordingly, Mitchell created a prima facie case of retaliatory discrimination.

"When a plaintiff presents circumstantial rather than direct evidence of an employer's retaliatory motive, we examine the claim under the *McDonnell Douglas/Burdine* burden-shifting framework." *Cuddington*, 298 Mich App at 276, citing *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973); *Texas Dep't of Community Affairs v Burdine*, 450 US 248; 101 S Ct 1089; 67 L Ed 2d 207 (1981). Under this framework, the employer may present evidence of a legitimate, nondiscriminatory reason for its employment action. The burden then shifts to the plaintiff to establish that this stated reason is mere pretext. *Cuddington*, 298 Mich App at 276-277.

At the summary disposition stage, Dore contended that it terminated Mitchell's employment because there was not enough work left for three general laborers and did not recall him to work because the next projects were staffed with local laborers.

Mitchell responded to these cited reasons and presented evidence to create a question of fact regarding Dore's motive. Edward testified that an employee's filing of a workers' compensation claim would increase Dore's experience rating, which in turn would lead to higher insurance premiums. Edward admitted that Dore's experience rating did increase following Mitchell's claim. Moreover, Mitchell presented evidence that Dore only laid off one of three general laborers on the project—Mitchell—calling into question Dore's explanation that work for the general laborers had simply dried up. And when Mitchell asked Green if he would be recalled for another project, Green responded that he did not know. This stands in contrast to Dore's usual practice of rehiring workers at a later time when other projects arose. Again, Dore refuted Mitchell's evidence, but this created a credibility contest for the jury's review, precluding summary disposition.

## III. ADMISSIBILITY OF EVIDENCE

Dore does not directly attack the jury's ultimate judgment in Mitchell's favor. Instead, Dore challenges the trial court's preclusion of evidence regarding Mitchell's criminal history and history of probation violations, and his prior excused work absence from work to visit his ill sister. Dore asserts that evidence of Mitchell's criminal history would help explain why Mitchell had such a difficult time finding replacement work. Knowing that Mitchell's own conduct impacted his job hunt, Dore theorizes, the jury would have held him at least partially responsible for the economic damages incurred after he was laid off from Dore. The evidence was also

necessary for impeachment purposes, Dore contends. Mitchel "present[ed] himself as a model employee that any employer would dream to have," so evidence of his criminal history and absences from work were highly relevant.[3]

We review for an abuse of discretion a trial court's ruling regarding the admissibility of evidence. *Lenawee Co v Wagley*, 301 Mich App 134, 164; 836 NW2d 193 (2013). "A trial court abuses its discretion only when its decision results in an outcome falling outside the range of principled outcomes." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 692; 777 NW2d 511 (2009).

Mitchell had been convicted of driving while intoxicated on three occasions and driving with a suspended license on one. After his latest conviction, Mitchell was placed on probation for five years. He violated probation twice. This evidence, as well as Mitchell's work absences, is evidence of prior acts. Generally, where a party places his or her character at issue by offering evidence of specific instances of good conduct, rebuttal evidence may be offered to impeach the party's credibility. *Nolte v Port Huron Area Sch Dist Bd of Ed*, 152 Mich App 637, 644; 394 NW2d 54 (1986). Pursuant to MRE 404(b)(1), however, the admissibility of prior acts evidence is limited:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Moreover, MRE 609(a) limits the use of a witness's criminal convictions as impeachment evidence:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and
>
> (1) the crime contained an element of dishonesty or false statement, or
>
> (2) the crime contained an element of theft . . . .

Driving while impaired or with a suspended license and probation violation do not involve an element of dishonesty, false statement, or theft. Accordingly, Mitchell's criminal history was not admissible to impeach his testimony regarding his good character.

---

[3] In its appellate brief, Dore notes that it also sought to present evidence that Mitchell's driver's license had been suspended. The trial court did not preclude this evidence from trial, however.

The trial court also properly determined that this evidence was not admissible to negate Mitchell's damages claim. The doctrine of mitigation of damages provides that an injured party must make reasonable efforts to limit the extent or amount of his or her damages. *Morris v Clawson Tank Co*, 459 Mich 256, 267; 587 NW2d 253 (1998). The focus is on the level of efforts made by the injured party, not on outside factors that might affect the desire of other employers to hire the injured party. Evidence suggesting that Mitchell was not highly employable because of his criminal history was irrelevant to the issue of mitigation and therefore was inadmissible. See MRE 402 ("Evidence which is not relevant is not admissible.").

We also discern no error in the court's preclusion of evidence that Mitchell missed work to visit his hospitalized sister. Certainly, evidence that Mitchell missed work without excuse would be relevant to impeach Mitchell's suggestion that he was a model employee. However, Dore does not contest that Mitchell's absence was excused by Green. Like the trial court, we fail to see how an excused absence would have any bearing on Mitchell's work ethic.

We affirm.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher