*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AARON D. SMALLEY,

      Plaintiff-Appellant,

v

DOW CHEMICAL COMPANY,

      Defendant-Appellee,

and

DOW SILICONES CORPORATION,

      Defendant.

UNPUBLISHED
January 20, 2022

No. 353262
Midland Circuit Court
LC No. 19-006177-CD

Before: SAWYER, P.J., and STEPHENS and RICK, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant, Dow Chemical Company.[1] We affirm.

## I. BACKGROUND

Apart from a brief two-year period, plaintiff worked for defendant from 1999 until he was terminated in January 2019. Plaintiff began working as a technical advisor in January 2017, in which role he was primarily responsible for troubleshooting chemical-process issues. In 2017, plaintiff primarily reported to TW, the production leader, but MH, the operations leader, gave plaintiff his work assignments. Plaintiff initially worked between 40 and 50 hours per week but began working 60 hours per week soon after he began reporting directly to MH in late 2017 or

---

[1] The parties stipulated to dismiss defendant Dow Silicones Corporation before Dow Chemical Company filed its motion for summary disposition. Accordingly, "defendant" refers only to Dow Chemical Company.

early 2018. Plaintiff was unable to complete his work in 60 hours, but MH would not allow plaintiff to work more hours.

In March 2018, plaintiff drafted a personal/performance improvement plan (PIP) at the request of MH and TW. MH testified that in April 2018, he gave plaintiff a PIP that was substantially similar to the one plaintiff drafted. MH also gave plaintiff a document titled "notification of performance improvement period," stating that the PIP was to remain in effect until July 19, 2018. Plaintiff testified that when he was drafting the PIP, he was "starting to become concerned" about his job status. MH thought plaintiff was forgetful because he would ask plaintiff to make changes to procedures and plaintiff would come back with the same mistakes. Plaintiff told MH that he was not getting much sleep and that he was having memory issues.

MH had plaintiff go to Dow Medical for a "fitness-for-duty evaluation." Plaintiff was on medical leave from April 26, 2018 to August 7, 2018. Plaintiff completed a neuropsychological evaluation in July 2018, and he was diagnosed with attention deficit hyperactivity disorder (ADHD) and "[m]ild memory related deficits that are secondary to his statin use, inattentiveness and Type 1 diabetes[.]" Plaintiff was diagnosed with Type 1 diabetes at a young age and did not know he had attention deficit disorder (ADD)[2] until he received the neuropsychological test results.

After plaintiff returned from medical leave, he was placed on "special assignments" while the person who was filling in for him when he was on medical leave continued to remain in the technical-advisor role. Plaintiff was not given a new PIP. Plaintiff testified that MH told him he wanted him out of the department by the end of the year and that he left a human resources employee, JB, multiple voicemails in August 2018. MH and JB testified that plaintiff agreed that the technical-advisor position was no longer a "good fit" and that he would remain on the special assignments until he could find a new job. At an employee review meeting in January 2019, MH, TW, JB, a neutral manager, and an individual from the legal department unanimously decided to terminate plaintiff's employment on the basis of plaintiff's performance issues. There was no mention of any complaints of discrimination or retaliation.

Plaintiff filed this action, alleging that defendant discriminated and retaliated against him in violation of the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1201 *et seq*. The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10). This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary disposition de novo. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 11; 930 NW2d 393 (2018). Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the

---

[2] Although plaintiff's medical records show he was diagnosed with ADHD, plaintiff testified that he was diagnosed with ADD, not ADHD.

benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

### III. PWDCRA—DISCRIMINATION

Plaintiff first argues that the trial court erred by granting defendant's motion for summary disposition on his claim of discrimination. We disagree.

The PWDCRA provides, in relevant part, that a person or persons shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602(a). To establish a prima facia case of discrimination on the basis of an actual disability under the PWDCRA, the plaintiff must demonstrate that (1) he is disabled as defined by the act; (2) the disability is unrelated to the plaintiff's ability to perform the job; and (3) he was discriminated against in one of the ways described by the statute. *Peden v Detroit*, 470 Mich 195, 204; 680 NW2d 857 (2004). "Disability" is defined, in relevant part, to include the following:

> (*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

> (A) For purposes of article 2 [MCL 37.1201 *et seq.*], substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

> * * *

> (*iii*) Being regarded as having a determinable physical or mental characteristic described in subparagraph (*i*). [MCL 37.1103(d).]

"Major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 477; 606 NW2d 398 (1999) (quotation marks and citation omitted).

In this case, the trial court did not err by concluding that plaintiff failed to demonstrate he was actually disabled under the PWDCRA. At the hearing on defendant's motion for summary disposition, plaintiff directed the trial court to a specific portion of his medical records, arguing that the language demonstrated that his diabetes affected his ability to perform major life activities. However, as the trial court concluded, plaintiff's deposition testimony suggests otherwise.

The following exchange occurred between defendant's counsel and plaintiff regarding plaintiff's diabetes:

> *Q*. —but from 2003 on, was [your diabetes] controlled through medication?

*A.* Yes.

*Q.* Were you able to perform the functions of your jobs all the way up through your termination?

*A.* Yes.

*Q.* Were you able to care for yourself during that time period?

*A.* Yes.

*Q.* Able to, you know, do all of the functions of some sort of normal daily life? You know, walk, talk, eat?

*A.* Yes.

The following exchange occurred between defendant's counsel and plaintiff regarding plaintiff's ADD:

*Q.* Okay. So with respect to the ADD issue, though, I mean, were you put on any medication for it, was there any treatment or was it, you know, you could have this or it could be contributing, but it's not severe? . . . .

*A.* They felt that it was not that severe, so they didn't feel that I probably needed a medication for it.

*Q.* Okay. So did you ever go on any kind of ADD medication or anything to control it?

*A.* No.

*Q.* Did you ever feel like you needed to?

*A.* Wait, let me correct that. I think—my family doctor I think put me on one for a short period of time, then took me off because it was causing me some other issues, but I don't recall the details of it. Now that I think about it, I think I was on something for a short period of time, but they took me back off—

*Q.* All right.

*A.* —because it wasn't that severe anyway.

*Q.* It wasn't that severe?

*A.* Yeah.

*Q.* So you were able to care for yourself?

*A.* Yes.

*Q*. Walk, talk, eat?

*A*. Yes.

*Q*. All of the activities we do in our life?

*A*. Yes.

*Q*. Okay. Didn't have any—that didn't impact you that way, correct?

*A*. No.

Because plaintiff testified that his diabetes and ADD did not affect his ability to perform *any* major life activity, he cannot establish that either substantially limited his ability to perform one or more major life activities under MCL 37.1103(d)(*i*)(A).

The trial court also did not err by concluding that this case did not fall within the parameters of a perceived disability case. To succeed on a claim of a perceived disability, the plaintiff must demonstrate

> (1) that the employee was regarded as having a determinable physical or mental characteristic, (2) that the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities, and (3) that the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment or promotion. [*Michalski v Reuven Bar-Levav*, 463 Mich 723, 735; 625 NW2d 754 (2001).]

"Normally, a *perceived* disability will be one that pertains to a disability with some kind of unusual stigma attached, often a mental disability, where negative perceptions are more likely to influence the actions of an employer. Rarely, on the other hand, will an employer inaccurately perceive an employee to have a physical impairment because such impairments are generally obvious and unlikely to be misread." *Chiles*, 238 Mich App at 475-476. Here, plaintiff concedes he has diabetes and ADD. Therefore, defendant did not wrongly perceive that plaintiff had diabetes or ADD. *Id*. Because plaintiff failed to establish he was disabled or that defendant perceived him to be disabled, the trial court properly granted defendant's motion for summary disposition on Count I of plaintiff's complaint.

## IV. PWDCRA—RETALIATION

Plaintiff also argues that the trial court erred by granting defendant's motion for summary disposition on his claim of retaliation. We disagree.

To establish a prima facie case of unlawful retaliation, a plaintiff must show "(1) that he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Aho v Dep't of Corrections*, 263 Mich App 281, 288-289; 688 NW2d 104 (2004).

Initially, we reject the trial court's conclusion that there is no question of fact regarding whether plaintiff engaged in a protected activity. Plaintiff testified that he left JB five voicemails in August 2018. In September 2018, plaintiff sent JB an e-mail stating that he had not heard a response "regarding my numerous voice mails about my concerns regarding my position and the situation with my current supervisor." Plaintiff stated that he felt MH was the reason why Dow Medical put him on medical leave. Plaintiff also stated that two days after he returned from medical leave, MH told him that if plaintiff was not "out of the building by the end of the year," he would " 'use other means to have me removed' (which felt very threatening to me)." In particular, plaintiff stated that he questioned whether MH's behavior toward him was because MH "simply distrusts me due to my being a diabetic." A question of fact existed whether, in this September 2018 e-mail, plaintiff "opposed a violation" of the PWDCRA and therefore engaged in a protected activity. *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 435; 653 NW2d 415 (2002).

Nevertheless, plaintiff's retaliation claim fails because he failed to establish there was a causal connection between the protected activity and the adverse employment action. *Aho*, 263 Mich App at 288-289. A plaintiff must establish that his or her participation in the protected activity was a "significant factor in the employer's adverse employment action, not merely that there was a causal link between the two events." *Id*. at 289. In other words, "mere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a clear nexus between such action and the protected activity." *Id*.

Plaintiff testified that after he sent the September 2018 e-mail, MH "seemed to be keeping his distance and not saying much to me for a couple weeks," and that plaintiff thought JB may have told MH to "back off or something." Plaintiff was not terminated until four months later and there is no indication that plaintiff's termination was related to his sending the September 2018 e-mail. Plaintiff has failed to present evidence from which a reasonable jury could find that his participation in any protected activity was a "significant factor" in defendant's decision to terminate his employment. *Id*. At best, plaintiff presented evidence of speculation and conjecture, which is insufficient to create an issue of material fact. *Ghaffari v Turner Constr Co (On Remand)*, 268 Mich App 460, 464; 708 NW2d 448 (2005). Therefore, although the trial court erred by granting defendant's motion for summary disposition on the basis that plaintiff failed to establish he engaged in a protected activity, this error was harmless because plaintiff failed to establish there was a causal connection between the protected activity and the adverse employment action. *Aho*, 263 Mich App at 288-289.

Affirmed.

/s/ David H. Sawyer
/s/ Michelle M. Rick