*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY A. BYKAYLO,

Plaintiff-Appellant,

v

CHARTER TOWNSHIP OF WEST
BLOOMFIELD, EDWARD HAAPALA, STEVEN
KAPLAN, and LAWRENCE WHEATSTONE,

Defendants-Appellees.

UNPUBLISHED
May 14, 2020

No. 346711
Oakland Circuit Court
LC No. 2017-162558-CD

Before: JANSEN, P.J., and METER and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition and dismissing all of plaintiff's claims. This case arises from the termination of plaintiff's employment at the conclusion of her 18-month, long-term disability leave. Plaintiff brought claims against defendants under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*., the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., and the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*. We affirm.

## I. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001). When deciding whether summary disposition is proper under MCR 2.116(C)(10),[1] a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Greene v A P Products, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006). A motion brought under MCR 2.116(C)(10) is

---

[1] Defendants brought their motion under MCR 2.116(C)(7), (8), and (10), but the trial court stated it was relying solely on MCR 2.116(C)(10).

properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

## II. WDCA CLAIM

"The primary goal of the WDCA is to 'promptly deliver benefits to employees injured in the scope of their employment.'" *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 272; 826 NW2d 519 (2012), quoting *Dunbar v Mental Health Dep't*, 197 Mich App 1, 6; 495 NW2d 152 (1992). The WDCA prohibits an employer from discriminating against an employee for filing a worker's compensation claim. MCL 418.301(13) of the act provides:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

To establish a prima facie case of retaliation under the WDCA, a plaintiff must prove the following:

> (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected. [*Cuddington*, 298 Mich App at 275.]

Defendants moved for summary disposition, challenging plaintiff's ability to satisfy the causation element. "The last element, causation, is usually difficult to prove." *Id*. A plaintiff may rely on either direct or circumstantial evidence to prove this element. *Id*. at 275-276. "Direct" evidence is "evidence, which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazel v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (quotation marks and citation omitted). Thus, "[i]n the retaliation context, direct evidence of retaliation establishes without resort to an inference that an employer's decision to take an adverse employment action was at least in part retaliatory." *Cuddington*, 298 Mich App at 276. However, as this Court has noted, it is quite rare that am employer would openly admit to retaliating against an employee for her exercising a right to employment. *Id*.

In this instance, plaintiff asserts that she presented direct evidence of retaliation in the form of the following: (1) Edwin Haapala, plaintiff's supervisor, took the position that plaintiff was faking her injury, was useless, and he did not want her back at the township; (2) Steven Kaplan, the township supervisor, acknowledged that he was upset and irritated with plaintiff; (3) Haapala eliminated plaintiff's position right before her anticipated return to work; (4) Lawrence Whetstone, the director of the township's Human Resources (HR) Department, stated that "this had been going on for 18 months" in explaining the decision to terminate plaintiff's employment; (5) Marya Duncan, an HR Manager who reported to Whetstone, believed that plaintiff was "faking it" and "milking the system" while complaining about having to deal with plaintiff's worker's

compensation paperwork; and (6) Duncan stated that plaintiff was a waste of space and should resign.

At the outset, the evidence attributing the statements to Duncan is not admissible and is not properly considered when evaluating a motion for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) ("The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposing the motion."). Plaintiff cites her own deposition testimony in support of her contention that Duncan had said these things. In her deposition, plaintiff testified that she had heard from her friend, Lisa Kozora, that Duncan had said that plaintiff was just like the police officers who were "faking it and . . . milking" the worker's compensation system and should just resign. Plaintiff maintains that Duncan's statements are not hearsay, and therefore admissible, because she is not offering them to prove the truth of the matter asserted, i.e., that plaintiff was faking it and milking the system. See MRE 801(c) (including as part of the definition of "hearsay" that the out-of-court statement be offered "to prove the truth of the matter asserted"). While *Duncan's statements* by themselves would not amount to hearsay because they are not being offered to prove the truth of the matter asserted, plaintiff ignores the hearsay contained in *Kozora's statement*. Plaintiff is offering Kozora's out-of-court statement to prove the truth of the matter Kozora asserted, i.e., that Duncan indeed had said these things. Therefore, Kozora's statement is hearsay and generally would be inadmissible. MRE 802.

To avoid this outcome, plaintiff relies on two evidentiary provisions, MRE 801(d)(2)(D) and MRE 804(b)(7). Plaintiff claims that MRE 801(d)(2)(D), which exempts from hearsay statements made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," allows for the admission of the statement. We disagree because the evidence does not suggest that Kozora's statements to plaintiff were "concerning a matter within the scope of [her] employment." Indeed, plaintiff made it clear that these conversations with Kozora happened as part of their close friendship. Therefore, plaintiff's reliance on MRE 801(d)(2)(D) is misplaced.

Plaintiff also relies on the catch-all provision of MRE 804(b)(7), which exempts from the hearsay rule statements made by unavailable declarants when the statements have "equivalent circumstantial guarantees of trustworthiness." Although Kozora was unavailable because she had passed away after telling plaintiff these statements, there is nothing in the record to indicate that Kozora's statements to plaintiff had any guarantees of trustworthiness. Indeed, plaintiff in her brief on appeal merely cursorily avers that this rule applies but does not explain why or how. Therefore, plaintiff has failed to show how the statement should be admissible under MRE 804(b)(7). See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims[.]"). We also note that MRE 804(b)(7)(B) states that one of the factors a court should determine before admitting a statement under this subrule is that the statement should be "more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts." It should be clear that getting Duncan to testify regarding what she had told Kozora would be more probative on the point than to rely on Kozora's hearsay statement.

Turning to the remaining evidence plaintiff cites, none of it constitutes direct evidence of retaliation. Primarily, none of this evidence, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazel*, 464 Mich at 462 (emphasis added). Instead, all would require at least some inferences to get to the conclusion that defendants had terminated plaintiff's employment because of her use of worker's compensation benefits. When a plaintiff relies on circumstantial evidence in support of her claim under the WDCA, courts are to examine the claim under the familiar burden-shifting framework of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Cuddington*, 298 Mich App at 276. Under this type of analysis,

> when a plaintiff asserting a claim for retaliatory discharge under MCL 418.301(13) circumstantially establishes a rebuttable prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its adverse employment action. If the defendant produces a legitimate, nondiscriminatory reason for its action, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that retaliation was a motivating factor for the adverse action taken by the employer toward the plaintiff. A plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision. [*Id.* at 276-277 (quotation marks, citations, and brackets omitted).]

Regarding Haapala's comments that he thought plaintiff was faking her injury and was useless and that he did not want her back at the township, these types of comments typically would be sufficient to allow a plaintiff to make a prima facie case of retaliation. See *West v Gen Motors Corp*, 469 Mich 177, 186-187; 665 NW2d 468 (2003) (stating that evidence of a supervisor expressing clear displeasure with a plaintiff's protected activity can support a finding of retaliation). However, regardless of Haapala's purported negative views of plaintiff, there is no evidence that Haapala, although plaintiff's supervisor, was a decision-maker with respect to the decision to terminate plaintiff's employment. Plaintiff's employment was terminated on October 30, 2017. Whetstone, who made the recommendation to Kaplan to terminate plaintiff's employment, never talked to Haapala about this decision.[2] In fact, Haapala, after learning that plaintiff did not appear for work on October 30, expected her to return on October 31. The first time Haapala had learned that plaintiff's employment had been terminated was when he received the termination notice letter on November 1, 2017. After receiving the letter, Haapala immediately called Whetstone to ask what was going on. Whetstone testified that he had never heard that Haapala did not want plaintiff to return to work. In sum, there is no evidence that the decision to terminate plaintiff's employment was based on plaintiff's use of worker's compensation benefits or was influenced by Haapala.

---

[2] Kaplan, as the township supervisor, testified that he agreed with Whetstone's decision, but he also stated that he did not talk to Haapala about the decision to terminate before it happened.

Plaintiff's reliance on the fact that Kaplan had said that he was upset and irritated with plaintiff is misplaced. Kaplan never stated that he was upset that plaintiff had utilized the worker's compensation system. Instead, he testified that he was disappointed that plaintiff did not return to work at the end of her leave as expected on October 30. Kaplan explained that he was very unhappy with the fact that plaintiff did not return to work after the township had attempted to make various accommodations for her, including working with the worker's compensation agency. Moreover, the fact that Haapala eliminated plaintiff's prior position of office coordinator before plaintiff's anticipated return to work is not evidence of a causal connection between plaintiff's employment being terminated and her use of worker's compensation benefits.

Finally, plaintiff cites Whetstone's testimony, where he states that "this had been going on for 18 months." There is nothing to be inferred from this comment, other than that Whetstone was recognizing the obvious—plaintiff's problems as of October 30 were merely a continuation of her condition that had existed for the preceding 18 months. Even plaintiff admitted as much by agreeing that the pain she was having on October 30 was the same that she had been experiencing for "many years" and that "it was a continuation of what [she] had had before."

Therefore, we conclude that plaintiff failed to present sufficient evidence to support a prima facie case related to her WDCA claim and that the trial court properly granted defendants' motion for summary disposition with respect to this count.

Even assuming that plaintiff did present sufficient evidence to prove a prima facie case of retaliation under the WDCA, we would agree with the trial court that plaintiff has failed to show that defendants' proffered reason for termination was pretextual. As Whetstone explained, plaintiff's employment was terminated as a result of the provisions of a collective-bargaining agreement (CBA). According to Whetstone, once an employee has exhausted a year of disability leave, plus the six-month extension, and still cannot return to work, the employment must be terminated under the terms of the CBA. The pertinent provisions of the CBA provide as follows:

> 24.8 Employment While on Leave. The Township may demote, suspend or transfer an employee and/or require an employee to take an involuntary sick or health leave of absence if the employee suffers from a disability, mental or physical, which prevents the employee from satisfactorily performing his assigned duties as shown by medical evidence. *The employment of the employee will be terminated at the expiration of the voluntary or involuntary health leave of absence if the employee is not able to return to work pursuant to this Section.* Such disability shall be deemed just cause for the purpose of this Agreement.

> * * *

> 24.10 Termination of Employment Due to Disability. *An employee unable to return to work within one (1) year of the date of the illness or injury shall be deemed to be permanently disabled and shall be terminated from Township employment* subject to review and approval as outlined in Article 25 of this Agreement.

> * * *

25.5: Permanent Disability. If an employee has not returned after one (1) year, they will be subject to an evaluation by a Medical Evaluation selected by the Township. The Evaluator will determine whether the Employee has a reasonable likelihood to return to work with the next six (6) month period. If the Evaluator makes the determination that the Employee has a reasonable likelihood of returning to employment within the next six (6) month period, the Employee will be eligible to receive an additional six (6) months of benefits. If the Evaluator determines that there is not a reasonable likelihood of the Employee returning to work in the next six (6) month period, the Employee will not be eligible for extended benefits.

      A. A written notice of termination, and date of termination, shall be signed by the employee's Department Head and the Township Supervisor and delivered to the employee. [Emphasis added.]

Whetstone's interpretation of the CBA appears to be eminently reasonable. The use of the words "will be" and "shall be" denote mandatory action. See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). Further, the evidence is undisputed that plaintiff failed to report to work on October 30 because she was experiencing the same types of symptoms she had been experiencing for a long time, which were related to her work-related injury. In short, although her deadline for returning to work from her long-term disability was October 30, plaintiff could not return on that date because she was still suffering from that long-term disability.

Plaintiff has not presented any evidence to show that this legitimate, nondiscriminatory reason was pretextual. As noted earlier, "[a] plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision." *Cuddington*, 298 Mich App at 277.

In support of her assertion that defendants' reason for terminating her employment was pretextual, plaintiff relies on the fact that (1) the township blocked plaintiff's return a month earlier; (2) admitted that the decision to terminate her employment was discretionary; (3) Whetstone refused to communicate with plaintiff after the fact so that he could reconsider the decision; and (4) the township has never terminated anyone's employment under similar circumstances. Presumably, plaintiff is using these facts to show that defendants' reason was "not the actual factors motivating the decision." However, the above-cited facts do not support such an inference.

First, it is misleading to say that the township "blocked" plaintiff's September 22, 2017 return. While the township had informed plaintiff that her initial deadline for returning to work after her six-month extension was September 22, the township also had repeatedly notified plaintiff that before she could return to work, and consistent with the terms of the CBA, she had to pass an examination conducted by a township physician and that no such examination would even be scheduled until plaintiff's own doctors cleared her to return. It is uncontested that plaintiff provided her doctor's authorization to return to work on September 21, the day before the initial deadline to return to work. As Whetstone explained, this left the township with no time for plaintiff to be evaluated by one of its doctors, so Whetstone set a new return-to-work deadline of October 30, 2017.

Given the circumstances, no reasonable fact-finder could view the moving of the return-to-work date as anything other than a natural consequence of plaintiff producing her authorization to return to work the day before the September 22 deadline. While the new date could have been set to virtually any other date in October, the fact remains that the initial return-to-work date of September 22 clearly was going to be impossible to maintain, which necessitated a new date. Consequently, the fact that Whetstone established a new return-to-work date does not allow one to infer that the reason proffered for the termination of plaintiff's employment was pretextual.

Likewise, the fact that Whetstone did not communicate with plaintiff after deciding to terminate her employment does not tend to show that the proffered reason to terminate her employment was pretextual. Plaintiff identifies no authority that would have required Whetstone or the township to reconsider the decision.

Plaintiff also asserts that the fact that the township had never terminated anyone's employment for the reason it used to terminate plaintiff's employment is evidence of pretext. But that is an incomplete analysis. The fact that the township had never terminated anyone's employment for this reason is not pertinent, especially when there is no evidence that anyone in the township has ever been in plaintiff's situation before. In other words, because there is no evidence that anyone had exhausted a year of disability leave followed by a six-month extension without returning to work, it follows, *a fortiori*, that no such termination has occurred before. If plaintiff had presented evidence of disparate treatment between similarly situated employees, e.g., another employee had exhausted 18 months of disability leave and had been permitted to retain employment after being unable to return to work after those 18 months, then that certainly would have been more compelling.

Finally, plaintiff claims that because Haapala believed that plaintiff's employment should not have been terminated, it creates a question of fact regarding whether the township's reason for terminating the employment was believable. Plaintiff's position dovetails with her overall position that the decision to terminate her employment was discretionary, contrary to what Whetstone and the CBA state. First, Haapala did testify that he disagreed with the decision to terminate plaintiff's employment, but in his disagreement, Haapala did not mention anything about the provisions or requirements of the CBA. Haapala merely stated his personal opinion that because it "[s]ounds like she's ready to come back to work [soon]," there was no reason to terminate her employment presently. But because his opinion was not based on the requirements or terms of the CBA, it carries little significance. Second, plaintiff is incorrect when she says that Kaplan stated that the decision to terminate her employment was discretionary. All Kaplan said was that "state law" did not require the termination; he did not speak with regard to what the CBA may require. Moreover, the evidence shows that it is Whetstone, as the HR Director, who has the responsibility to administer the CBA with the township.

In sum, even if plaintiff had provided sufficient evidence to support a prima facie case of retaliation under the WDCA, summary disposition would be warranted in favor of defendants because plaintiff failed to present sufficient evidence to show that the legitimate, nondiscriminatory reason proffered by defendants for terminating plaintiff's employment was pretextual.

## III. WPA CLAIM

Second, plaintiff claims that she was retaliated against because she reported Haapala's violations or suspected violations of law to her employer, a public body under the WPA. Specifically, plaintiff alleges that in 2013 she reported to then Township Supervisor Michele Economou Ureste, then HR Director Denise Maier, and HR Assistant Duncan that Haapala had demanded plaintiff's pain narcotics, stole township property, and engaged in payroll fraud.

Under the WPA,

> [a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body or a court action. [MCL 15.362.]

Thus, in order to establish a prima facie case under the WPA, a plaintiff must show that "(1) the plaintiff was engaged in protected activity as defined by the [WPA], (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection exists between the protected activity and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted). As with the WDCA claim, defendants moved for summary disposition on the WPA claim, challenging the sufficiency of the evidence with respect to the causation element. Regarding causation, a plaintiff must show more than a mere temporal relationship between the protected conduct and the adverse employment action. *West*, 469 Mich at 186; see also *Debano-Griffin*, 493 Mich at 171. Because there was no direct evidence that the township terminated plaintiff's employment in 2017 because she reported suspected violations in 2013, the burden-shifting framework from *McDonnell Douglas* for circumstantial evidence must be utilized. *Debano-Griffin*, 493 Mich at 175-176.

Plaintiff argues that the trial court effectively downplayed or ignored the evidence showing that Haapala was irate after learning that plaintiff had complained to HR about his conduct. But as discussed in Part II of this opinion, there is no evidence that Haapala participated in or had any influence on the decision to terminate plaintiff's employment.

Plaintiff also argues that liability existed under a "cat's paw" theory.[3] Plaintiff asserts that Duncan, who "participated" in the decision to terminate her employment, was one of the individuals to whom plaintiff reported Haapala's alleged misdeeds, and therefore, a decision-maker had knowledge of plaintiff's protected activity. But plaintiff has not identified any evidence

---

[3] Under a "cat's paw" or "rubber stamp" theory, a plaintiff seeks "to hold [her] employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v Proctor Hosp*, 562 US 411, 415; 131 S Ct 1186; 179 L Ed 2d 144 (2011).

to show that Duncan held any animus toward plaintiff because of plaintiff being a whistleblower. Indeed, plaintiff merely states that Duncan, as a participant in the decision-making process, "had knowledge of [plaintiff's] protected [WPA] activity." But a decision-maker's mere knowledge that an employee had engaged in protected activity is not evidence that the decision-maker took action *because* the plaintiff had engaged in that activity. See 45A Am Jur 2d, Job Discrimination, § 248 ("An employer's knowledge of the employee's protected activity, without more, may be insufficient to prove the employer's retaliatory motive, such as where there is a rational, nonretaliatory explanation for the employer's conduct."). At best, plaintiff attempted to show that Duncan held animus toward her because of plaintiff's invocation of the right to worker's compensation benefits, but (1) that evidence is not admissible as discussed in Part II of this opinion, and (2) even if true, it is not related to a whistleblower claim. Thus, there is no evidence to support plaintiff's cat's paw theory.

Therefore, defendants' motion for summary disposition was properly granted for plaintiff's failure to establish a prima facie case.

Moreover, as discussed *supra*, assuming that plaintiff had presented sufficient evidence to establish a prima facie claim under the WPA, she failed to present evidence to show that defendants' proffered reason for terminating her employment was a pretext. The trial court did not err when it granted defendants' motion for summary disposition with respect to plaintiff's WPA claim.

## IV. ELCRA CLAIM

Plaintiff's third claim, her ELCRA claim, is based on the premise that her employment was terminated in retaliation for her bringing complaints of sexual harassment against Haapala in 2013. MCL 37.2701(a) of the ELCRA provides that "[t]wo or more persons shall not conspire to, or a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act or because the person has made a charge [or] filed a complaint . . . under the act." To establish a prima facie case of retaliation under the ELCRA, a plaintiff must demonstrate (1) that she engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

As with the other retaliation claims discussed earlier, a retaliation claim under the ELCRA may be proven through either circumstantial or direct evidence, and if circumstantial evidence is relied upon, the burden-shifting framework from *McDonnel Douglas* is utilized. *Hazel*, 464 Mich at 462-463. And just like those other retaliation claims, defendants challenged plaintiff's ability to prove the causation element.

To prove causation, "[a] plaintiff must show that [her] participation in activity protected by the [ELCRA] was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004) (quotation marks and citation omitted).

In this case, the protected activity consisted of plaintiff reporting to Duncan of Haapala's sexual comments in the workplace. Plaintiff testified that she complained to Duncan in 2011 regarding these matters.[4] But despite Duncan having knowledge about plaintiff's reporting of Haapala's alleged harassment, there is no evidence to allow an inference that Duncan held any animus toward plaintiff because of this reporting, and there was no evidence to show that Whetstone or Kaplan (or Haapala for that matter) were aware of plaintiff's complaints regarding Haapala's sexual banter. Therefore, plaintiff failed to establish a prima facie case and summary disposition was properly granted in favor of defendants on this count.

Moreover, assuming plaintiff did establish a prima facie case for her ELCRA claim, for the reasons already discussed, plaintiff cannot show that the proffered reason for her employment termination—abiding by the terms of the CBA—was pretextual.

## V. PWDCRA CLAIM

Finally, plaintiff raised a PWDRCA claim in the trial court. The purpose of the PWDCRA "is to ensure that all persons be accorded equal opportunities to obtain employment, housing, and the utilization of public accommodations, services, and facilities." *Stevens v Inland Waters, Inc*, 220 Mich App 212, 216; 559 NW2d 61 (1996). MCL 37.102(1)(b) of the PWDCRA provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual . . . because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." Thus, to establish a prima facie case of discrimination, a plaintiff must prove that "(1) [she] is 'disabled' as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 473; 606 NW2d 398 (1999).

Defendants moved for summary disposition on this claim, arguing, *inter alia*, that plaintiff could not satisfy the second element—that her disability was unrelated to her ability to perform the duties of her job. The trial court agreed that even when viewing the evidence in a light most favorable to plaintiff, the evidence showed that plaintiff's disability *was* related to her ability to do her job, which was fatal to her claim. Notably, this is the only rationale the trial court gave in granting defendants' motion for summary disposition on this count.

On appeal, plaintiff wholly ignores the basis for the trial court's ruling and does not present any argument on how the trial court's conclusion was incorrect. Instead, plaintiff merely states that her physical limitations impaired her major life activities of sitting, standing, lifting, and

---

[4] It is unclear that these complaints were done as "official" complaints. Plaintiff testified that she shared this information with Duncan as "a friend" and "sometimes in an HR capacity." Notably, although some of these conversations happened in an "HR capacity," plaintiff never felt that she was making an "official" complaint. Regardless, because the evidence must be viewed in a light most favorable to plaintiff at this stage, *Greene*, 475 Mich at 507, we view the evidence as sufficient to show that at least some of these complaints to Duncan had been done as "official" complaints to HR.

walking and that the township viewed her as "damaged goods" and treated her as such. In other words, plaintiff's argument does not suggest or touch upon how the evidence supports a finding that her disability was not related to her ability to perform her job duties. The failure to address the basis for the trial court's decision is fatal to her claim on appeal. "When an appellant fails to dispute the basis of the trial court's ruling, '[t]his Court . . . need not even consider granting plaintiffs the relief they seek.' " *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004), quoting *Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997).

Moreover, it is clear that the trial court did not err. It is quite evident that being able to report to and being able to work is a fundamental part of any job. See *EEOC v Ford Motor Co*, 782 F3d 753, 761 (CA 6, 2015) (holding that a person did not have a qualified disability because "her excessive absences prevented her from performing the essential functions" of her job, and commenting that "[m]uch ink has been spilled establishing a general rule that, with few exceptions, an employee who does not come to work cannot perform any of his job functions, essential or otherwise") (quotation marks and citation omitted); *EEOC v Yellow Freight Sys, Inc*, 253 F3d 943, 948 (CA 7, 2001) ("[A]ttendance at the job site is a basic requirement of most jobs.") (quotation marks and citation omitted). Because plaintiff's disability prevented her from returning to work, the evidence is unmistakable that her disability is related to her ability to perform her job functions. We also note that plaintiff has testified that there had not been a week from 2016 to the time of her deposition in June 2018 in which she would have been able to work a full week. Plaintiff also admitted that the reason she did not return to work on October 30 was due to neck and back pain, which was just a continuation of what she had suffered with for the previous many years. In light of the fact that plaintiff's chronic pain and accompanying narcotic medication keeps her from being able to report to work, there is no genuine issue of material fact that plaintiff's disability is related to her ability to do her job. Therefore, the trial court properly granted defendants' motion for summary disposition with respect to plaintiff's PWDCRA count.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Thomas C. Cameron