*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID GUSTER,

       Plaintiff-Appellant,

v

MEYER DISTRIBUTING, INC.,

       Defendant-Appellee.

UNPUBLISHED
June 16, 2022

No. 356329
Macomb Circuit Court
LC No. 2020-001369-CD

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff, who was formerly employed by defendant as a truck driver, brought this action for discrimination under the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and retaliation under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, after he was terminated from his employment following a knee injury. The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and dismissed both claims. We affirm the dismissal of the PWDCRA claim, but reverse the dismissal of the WDCA claim and remand to the trial court for further proceedings because there are issues of fact regarding whether defendant retaliated against plaintiff for pursuing a claim for benefits under the WDCA.

## I. BACKGROUND FACTS

Plaintiff was hired by defendant as a truck driver in 2018. In April 2019, plaintiff injured his left knee when he slipped and fell while getting out of a truck at work. He underwent surgery for a torn meniscus, and while off the job, received worker's compensation benefits.

After plaintiff returned to work, he suffered a second injury to the same knee while unloading an item from the back of a truck. His foot slipped and he felt his knee pop. Plaintiff again received worker's compensation benefits. His doctor again diagnosed a torn meniscus and this time recommended that plaintiff undergo partial knee-replacement surgery. The surgery was scheduled for December 2019, but was cancelled after defendant's worker's compensation insurer requested that plaintiff submit to an independent medical examination (IME) on January 15, 2020.

-1-

In the meantime, on December 5, 2019, plaintiff's doctor allowed plaintiff to return to work while being placed under restrictions for lifting, bending, and climbing. Defendant also offered plaintiff a light-duty position as a leads caller, which primarily involved clerical tasks, and plaintiff took the position.

Plaintiff had an IME on January 15, 2020. The IME physician concluded that plaintiff's knee injury was not work related, but instead involved a preexisting arthritic or degenerative condition. On January 21, 2020, defendant informed plaintiff that, given the results of the IME, he could not remain on worker's compensation. Plaintiff said he was directed to contact defendant's Human Resources Department, and he spoke to either Crista Rocker or Stefany Hardin on January 21, 2020, but could not recall which one. When plaintiff told one of them that he had been told that he could not remain on worker's compensation, one of the women told him: "Well we can't have you continue working here because you're not a workers' comp case. So you need— you should go home and see what your insurance says, see if your insurance will pay for the surgery, if they'll cover you on disability." Plaintiff also was told by his supervisors that he could not remain at work and that they could not offer him light-duty work because he was no longer receiving worker's compensation benefits.

Plaintiff's last day on the job for defendant was January 21, 2020. His employment formally ended when he exhausted his leave time, which was February 3, 2020. Plaintiff did not have further knee surgery because he could not afford the co-pay required under his insurance coverage he had through his wife's employment.

In his complaint, plaintiff alleged that defendant violated the PWDCRA because his knee injury was a disability and defendant terminated his employment instead of offering him reasonable accommodations to allow him to continue to work. Plaintiff also alleged that defendant retaliated against him, contrary to the WDCA, MCL 418.301(11). The trial court granted defendant's motion for summary disposition and dismissed both claims. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is review de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted defendant's motion under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014) (quotation marks and citation omitted).

## III. DISABILITY UNDER THE PWDCRA

Plaintiff argues that the trial court erred by holding that he could not prove a disability under the PWDCRA. We disagree.

To establish a claim under the PWDCRA, a plaintiff is required to prove the following elements:

"To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." [*Peden v Detroit*, 470 Mich 195, 204; 680 NW2d 857 (2004) (citation omitted).]

The trial court determined that plaintiff failed to show that he was disabled within the meaning of the PWDCRA. MCL 37.1103(d)(*i*)(A) defines a disability for purposes of the PWDCRA, in relevant part, as follows:

(d) Except as provided under subdivision (f), "disability" means 1 or more of the following:

(*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

It is undisputed that plaintiff has an injured knee. Both doctors who examined him recommended that he have a partial knee replacement and concluded that he cannot work as a truck driver until that surgery is performed. To meet the definition of a disability under the PWDCRA, however, plaintiff must show that his condition substantially limits at least one major life activity that is unrelated to his ability to perform the duties of his job. See *id*.

Although plaintiff presented evidence that he experiences pain in his knee, its impact on his major life activities cannot be considered substantial. The evidence showed that plaintiff is able to engage in life's major activities. Although the knee injury prevents him from working as a truck driver due to the physical requirements of that position, plaintiff still is able to work within the restrictions concerning the use of his knee as he was able to perform the tasks in the position of leads caller.

Plaintiff argues that his knee injury affects his ability to walk, which involves a major life activity. Clearly walking is a major life activity. *Chiles v Machine Shop, Inc*, 238 Mich App 462, 477; 606 NW2d 398 (1999). To qualify as a disability under the PWDCRA, however, the major life activity must be "substantially limited." *Id*. While plaintiff states that he cannot walk for long distances, he still has the ability to walk. He has not shown that the limitations on how long he

can walk prevent him from actually performing this major life activity. His injury, while affecting his ability to walk, does not substantially limit this major life activity.[1]

Furthermore, to the extent that plaintiff's knee condition qualifies as a disability, he does not dispute that it prevents him from performing the duties of his job as a truck driver. Plaintiff asserts, however, that he was given a new position as a leads caller, which is a position he could perform with his knee injury without accommodation. Plaintiff argues that because he could perform that job, his employment was terminated, contrary to the PWDCRA. He argues that the trial court erred by considering only whether he could perform the truck driver position.

In *Peden*, 470 Mich at 217-220, the Court explained that deference should be given to an employer's judgment regarding the duties of a particular job. As noted, plaintiff contends that he was actually placed in a new position, in which he is able to perform with his disability. In *Peden*, 470 Mich at 205 n 9, the Court explained that the fact that the plaintiff could perform some job is not relevant; "rather, he must be able to perform *the* job he held or sought at the time the alleged PWDCRA violation occurred, and any accommodation must be directed toward enabling the plaintiff to perform the duties of *that* job." (Emphasis in original.) Defendant maintains, correctly, that plaintiff's position was as a truck driver, and although it temporarily accommodated plaintiff by restructuring his job while he was on worker's disability, it was under no duty to do so. See *Kerns v Dura Mech Components, Inc*, 242 Mich App 1, 16; 618 NW2d 56 (2000).

We disagree with plaintiff's claim that his position as a leads caller at the time his employment ended is the relevant position for purposes of analyzing his PWDCRA claim. The evidence clearly establishes that plaintiff only was offered that position on a temporary basis while he was receiving worker's compensation benefits for a work-related injury. The position was established pursuant to defendant's policy of offering light-duty work to employees with work-related injuries. The letter plaintiff signed accepting the position clearly states that it was offered to plaintiff to help him get back to work after a work-related injury. There is no evidence that defendant allowed plaintiff to transfer from a position as a truck driver to a new light-duty position on a permanent basis, or that either defendant or plaintiff understood or intended that plaintiff would not return to his position as a truck driver after his contemplated surgery to correct his knee condition. Thus, even if plaintiff does have a disability under the PWDCRA, the trial court

---

[1] We note that although the trial court did not err by ruling that plaintiff did not have a disability within the meaning of the PWDCRA, it erred by also noting that plaintiff had not submitted evidence that a second surgery on his knee would not be successful. In *Michalski v Reuven Bar-Levav*, 463 Mich 723, 733-734; 625 NW2d 754 (2001), the Court explained that whether a plaintiff has an actual disability or a perceived disability shall be made on the basis of the plaintiff's condition at the time of his employment. Thus, the trial court should not have considered whether plaintiff's knee condition was likely to continue into the future. The trial court should have limited its analysis to the condition of plaintiff's knee at the time his employment ended, which it did when analyzing whether plaintiff had a disability. The trial court's erroneous comment concerning whether a second knee surgery would be successful was unnecessary, but it does not require reversal because it does not affect the outcome.

properly dismissed this claim because plaintiff was unable to perform the essential duties of the position of truck driver, the position for which defendant hired him.

For these reasons, the trial court did not err by granting summary disposition for defendant on plaintiff's PWDCRA claim.

## IV. WDCA RETALIATION CLAIM

Plaintiff also argues that the trial court erred by granting defendant summary disposition of his WDCA retaliation claim under MCR 2.116(C)(10). We agree as a factual issue remains.

In Count II of his complaint, plaintiff alleged that he made requests for worker's compensation benefits and defendant refused to allow him to return to work with reasonable accommodations, discontinued his primary health insurance and other benefits, and terminated his employment in retaliation for exercising his rights under the WDCA. The trial court agreed that plaintiff claimed a work-related injury and that defendant knew that he was seeking medical services for the injury, but found no evidence of a causal connection between the termination of plaintiff's employment and his exercise of rights under the WDCA.

MCL 418.301(13) provides:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

In *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 275; 826 NW2d 519 (2012), this Court explained that to prove

> a prima facie case of retaliation under the WDCA, an employee who has suffered a work-related injury must present evidence: (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected.

Here, plaintiff satisfies the first element because it is undisputed that he asserted his right to obtain medical services and actually received medical services for his left knee injury by seeking and obtaining medical treatment, and by scheduling partial knee-replacement surgery. Second, it is also undisputed that defendant knew that plaintiff was seeking medical services under the WDCA, which is protected conduct. Third, defendant took an adverse employment action against plaintiff when it informed him that his employment would be terminated after learning that the worker's compensation insurer would no longer provide benefits, particularly the partial knee replacement surgery, and that his injury prevented him from performing his job as a truck driver. At issue in this case is the last element of a prima facia case of retaliation.

In *Cuddington*, 298 Mich App at 275-278, this Court explained:

The last element, causation, is usually difficult to prove. Under some circumstances, a plaintiff may be able to produce direct evidence of retaliatory animus. In employment discrimination cases, our Supreme Court has defined "direct evidence" as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (quotation marks and citation omitted). In the retaliation context, direct evidence of retaliation establishes without resort to an inference that an employer's decision to take an adverse employment action was at least in part retaliatory.

Rarely will an employer openly admit having fired a worker in retaliation for exercising a right of employment. Rebecca's alleged threat to fire plaintiff if he did not report for work does not constitute direct evidence that she fired him because he intended to seek medical services, but it supports an inference to that effect. When a plaintiff presents circumstantial rather than direct evidence of an employer's retaliatory motive, we examine the claim under the *McDonnell Douglas/Burdine*[2] burden-shifting framework. *Chiles v Machine Shop, Inc*, 238 Mich App 462, 470; 606 NW2d 398 (1999).

Under the *McDonnell Douglas/Burdine* analysis, when a plaintiff asserting a claim for retaliatory discharge under MCL 418.301(13) circumstantially establishes a rebuttable prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its adverse employment action. See *Hazle*, 464 Mich at 464. If the defendant produces a legitimate, nondiscriminatory reason for its action, "the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that [retaliation] was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Id.* at 465, quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176; 579 NW2d 906 (1998). A plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision. *Dubey v Stroh Brewery Co*, 185 Mich App 561, 565-566; 462 NW2d 758 (1990).

The record evidence in this case supports that defendant knew of plaintiff's work-related injury and that plaintiff exercised a right afforded under the Act. Rebecca's instruction that plaintiff report for work despite his injury and professed need for medical services supports an inference of causation, i.e., that defendant terminated plaintiff's employment because he elected to obtain necessary medical services instead of reporting for work. Thus, viewed in the light most favorable to plaintiff, plaintiff's evidence sufficed to establish a prima facie retaliation claim.

---

[2] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973); *Texas Dep't of Community Affairs v Burdine*, 450 US 248; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

Defendant rebutted plaintiff's prima facie proofs with evidence that it had terminated plaintiff's employment because he called in at 9:02 a.m. rather than before 9:00 a.m., when his shift commenced. In response to this legitimate reason for termination, plaintiff asserted that his wife had called defendant in a timely fashion and left a message that plaintiff was unable to work because of his injury. Whether defendant fired plaintiff as retaliation for his pursuit of medical services is central to this case. However, summary disposition was granted before the parties had an opportunity to adequately explore the issue of causation. Further factual development concerning this issue is required consistent with this opinion. [Footnotes omitted.]

With *Cuddington* as our guide, we believe that plaintiff in the matter before us produced circumstantial evidence that a fact finder may determine defendant had the intent to retaliate against plaintiff. Thus, the trial court's summary disposition on this claim is in error.

Plaintiff was receiving worker's compensation benefits for what was believed to be a work-related injury. After the IME, however, the insurer determined that the injury was not work related, but instead was attributable to a preexisting degenerative condition in the knee. Therefore, the insurer was no longer willing to pay WDCA benefits to plaintiff.

According to plaintiff, when the results of the IME changed his WDCA coverage, he was told by either Crista Rocker (defendant's safety director) or Stefany Hardin (a human resources generalist for defendant) that he could not continue to work in the light-duty position because he no longer had a worker's compensation case, and any medical coverage for his injury would have to be through another insurer. According to plaintiff, both of his supervisors also told him that he was dismissed from work because he was no longer receiving WDCA benefits and they could not continue to offer him light-duty work. This is not direct evidence of retaliation because it does not "require the conclusion" that defendant retaliated against plaintiff for seeking and obtaining medical services for his left knee injury. See *id*. at 276. In other words, it does not necessarily show that defendant dismissed plaintiff from work because he engaged in a protected activity, i.e., seeking and obtaining medical services.

However, plaintiff has met his burden under the *McDonnell Douglas/Burdine* analysis to put forth "circumstantial evidence" of retaliation. A jury could find that defendant's explanation for why plaintiff's employment was terminated was a pretext for retaliation. First, no one involved actually took responsibility for deciding to terminate plaintiff's employment. Rather, defendant explained that plaintiff was let go because he ran out of leave time and did not return to work. Second, as noted earlier, the jury could conclude that defendant was motivated to end plaintiff's employment after the insurer denied that his injury was work related. Although not direct evidence of retaliation, one inference that could be made is that defendant chose to dismiss plaintiff because he instigated an ultimately unsuccessful long-term WDCA claim.

In response, defendant relies on the insurer's assessment that plaintiff's injury was not work related and that plaintiff could not perform the duties of a truck driver. Defendant also argues that it actually assisted plaintiff in seeking worker's compensation benefits. Admittedly, these facts tend to show that its dismissal of plaintiff was permissible. However, it is also true that once the insurer disputed plaintiff's claim that his injury was work related, defendant took steps to end

plaintiff's employment. This change in defendant's position toward plaintiff's claim for benefits and services under the WDCA supports plaintiff's argument that defendant's actions were retaliatory. It is for a fact finder to determine whether the reasons offered by defendant were permissible or mere pretext for retaliation. See *id*. at 277.

Defendant also argues that the statement attributed to its employee—that plaintiff was told he was being let go because his worker's compensation claim was denied—is not admissible evidence, and therefore, cannot support plaintiff's claim. Defendant argues that the statement is inadmissible because plaintiff cannot identify who made the statement, which is a condition precedent to its admissibility. See MRE 901(a). Defendant cites *Major v Village of Newberry*, 316 Mich App 527, 551; 892 NW2d 402 (2016), in which this Court held that a worker's remark that he heard individuals referred to only as "them" call the plaintiff a "bitch" was inadmissible hearsay. This case is distinguishable from *Major* because plaintiff identified the source of the statement as one of two possible women, both of whom are defendant's employees who handled employment matters. Whether the statement was made by Rocker (the safety director) or Hardin (a human resources generalist), the statement was admissible under MRE 801(d)(2)(A), (C), or (D), as an admission of a party-opponent made by someone authorized to speak on defendant's behalf.

Defendant also argues that plaintiff improperly relied on a contradictory affidavit. However, plaintiff's affidavit actually is consistent with his deposition testimony about being told that he could no longer work for defendant because his worker's compensation claim was denied by the insurer. In both his affidavit and his deposition testimony, plaintiff attributed this statement to either "Crista or Stefany," i.e., Rocker or Hardin.

In sum, there are questions of fact regarding plaintiff's WDCA retaliation claim that precluded the trial court from granting summary disposition for defendant on that claim. Accordingly, we reverse the dismissal of plaintiff's WDCA claim and remand to that court for further proceedings on that claim.

## V. CONCLUSION

We affirm the trial court's dismissal of the PWDCRA claim. However, we reverse the trial court's dismissal of the WDCA claim because plaintiff submitted sufficient circumstantial evidence to avoid summary disposition. We therefore remand to that court for further proceedings consistent with our opinion.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan